# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Tricia Breckheimer, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:23-cv-188 |
| Trevor Jacobsen; Elizabeth Jacobsen; Jacobsen Farms, Partnership; Bank Forward; and Commodity Credit Corporation, | ) **REPORT AND RECOMMENDATION** ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Tricia Breckheimer (Tricia) seeks partition of certain farmland pursuant to North Dakota law. Tricia and defendant Trevor Jacobsen (Trevor) are siblings who inherited the subject farmland after the death of their parents. At some point after their parents' death, the two siblings' spouses obtained ownership interests in the farmland; Tricia, her spouse Thomas Breckheimer (Thomas), Trevor, and his spouse Elizabeth Jacobsen (Elizabeth) then each held a 25% interest in the farmland. Thomas died in January 2023, and Tricia inherited his 25% interest in the farmland.

From 2007 until Thomas died, each of the four owners held a 25% interest in Jacobsen Farms, Partnership (the Partnership). For many years, the four owners leased the jointly-owned land to the Partnership, though there was no written lease agreement. The Partnership owned the farming equipment, collected profits, and paid rent to the owners based on tax and mortgage liabilities in March following each crop year. The Partnership continued to farm the subject property during the 2023 crop year. After Thomas died, Tricia—who had inherited Thomas' interest in the partnership—sold her 50% interest in the Partnership to Trevor and Elizabeth.

In addition to seeking partition of her interest in the farmland from that of Trevor and Elizabeth, Tricia's complaint seeks payment of fair rental value of her interest in the property for the 2023 crop year. In a pending motion, she seeks to amend her complaint to include "the fair market cash rent for the 2024 and any subsequent farm years." (Doc. 42, p. 1).

North Dakota law provides for appointment of three referees in a partition action, though with the consent of the parties, the court may appoint one referee rather than three referees. Although the parties agreed to appointment of a single referee during a March 15, 2024 status conference, they did not agree on a person to be appointed. The court has appointed Chris Griffin—an attorney who is also a licensed real estate salesperson—as referee.

The Jacobsens (Trevor, Elizabeth, and the Partnership) move for a "temporary lease" of the subject property to the Partnership for the 2024 crop year. Specifically, the Jacobsens request the Court "temporarily extend the existing lease of the subject lands . . . to the Jacobsen Farms, Partnership for the upcoming 2024 farming season, pending resolution of the present partition action." (Doc. 21, p. 1). The planting season is underway, and the Jacobsens request an order on their motion as soon as possible.

Tricia does not object to the Partnership farming the land in 2024 but asks that the Partnership be allowed to do so only "upon immediate payment of a 2023 fair market value cash rent payment plus interest as determined by the court or the immediate payment of a fair market value 2024 cash rent payment as determined by the court on the condition that the Jacobsen Defendants not cause any damage to the land or to the improvements on the land including the fencing and that the land be farmed

2

and maintained in the 2024 farm year in the same or better condition than it currently is along with the fall work being appropriately completed." (Doc. 35, p. 18). Tricia disputes the premise that there is an "existing lease." Id. at 12. The Jacobsens contend it is improper for Tricia to request relief in her favor in her response to the motion, rather than to initiate a motion.

Defendant Commodity Credit Corporation supports the Jacobsens' motion, asserting it would be "equitable to continue the status quo by allowing the Jacobsen Farms, Partnership, to lease and operate the farmland at issue in 2024." (Doc. 34).

**Law and Discussion**

Before addressing merits of the motion, the court must consider whether it has authority to provide the relief the Jacobsens seek. North Dakota law governing partition actions does not address rental of the subject property while a partition action is pending. See N.D. Cent. Code chapter 32-16. The parties have cited no authority addressing a motion for relief such as that the Jacobsens request.

In their motion, the Jacobsens seek an order to "maintain the status quo" until the March 2025 trial. (Doc. 22, p. 1). The court views the request as one for preliminary relief—preliminary because it would occur "before the trial." See Bagley v. Yale Univ., No. 3:13-CV-1890, 2014 WL 7370021, at *5 (D. Conn. Dec. 29, 2014). A court's grant of preliminary relief is typically injunctive—either mandatory[1] or prohibitory. "A mandatory injunction orders a responsible party to take action, while a prohibitory

---

[1] An injunction that orders a party to take affirmative action is called a "mandatory injunction" and is "cautiously viewed and sparingly issued." Money v. Pritzker, 453 F. Supp. 3d 1103, 1117 (N.D. Ill. 2020) (citation and internal quotation marks omitted).

injunction prohibits a party from taking action and preserves the status quo pending a final resolution on the merits." Sassman v. Brown, 73 F. Supp. 3d 1241, 1247 (E.D. Cal. 2014). "A mandatory injunction goes well beyond simply maintaining the status quo and is particularly disfavored." Id.

While a prohibitory injunction directs someone to refrain from some action, it cannot create a contract between two parties. See Kleinheider v. Phillips Pipe Line Co., 528 F.2d 837, 841 (8th Cir. 1975) ("It is axiomatic that a court cannot create a contract for the parties when one does not otherwise exist."). Tricia could, for example, be prohibited from interfering with the Partnership farming the subject property until the case is resolved. But she does not intend to interfere, (see Doc. 35, p. 14), so a prohibitory injunction is not appropriate.

Tricia instead requests an order that the Partnership make an immediate payment of rent as a prerequisite for leasing the land during the 2024 crop year. See id. at 18. That too is unavailable as a pretrial remedy. "[A]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210-11 (2002). Any order for monetary relief must wait until final judgment because a court cannot give "final relief in advance of . . . trial." See Sims v. Stuart, 291 F. 707, 707 (S.D.N.Y. 1922); see also United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939) ("While [an injunction] may be granted to restore the status quo ante, it ought not to be used to give final relief before trial."). That is how most cases proceed; plaintiffs must endure monetary injuries until a judgment provides relief. See id.

4

Lastly, judicial "extension" of a lease would turn a private agreement into a court order with violations punishable by contempt. Doing so would interfere with the parties' ability to contract and embroil courts in the day-to-day execution of a private agreement. That is why courts do not approve settlement agreements absent special circumstances. See Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1188-89 (8th Cir. 1984). Courts "need not and should not get involved" in setting or approving the terms of settlement agreements. Id. at 1189 (citation omitted). Tricia and the Partnership are free to enter into a lease for the 2024 crop year, but its terms should not—and cannot—be set or approved by this Court. See Hancock Shoppes, LLC v. Retained Subsidiary One, LLC, No. 2:17-cv-364, 2017 WL 11616104, at *3 (M.D. Fla. Oct. 27, 2017) (stating "this Court is without authority to rewrite [a] lease"); Showplace of Flagler, LLC v. Quest Diagnostics Clinical Lab'ys, Inc., No. 10-24286-CV, 2012 WL 913252, at *5 n.4 (S.D. Fla. Mar. 16, 2012) (noting "it is beyond the Court's authority to rewrite a lease so that it makes commercial sense"); Cuyler v. Atlantic & N.C.R. Co., 132 F. 568, 569-70 (C.C.N.C. 1904) (concluding the court had "no power to make a lease").

The Partnership desires to farm the land during the 2024 crop year, and Tricia does not object to the Partnership doing so but requests the Partnership first pay rent for the 2023 crop year. That could be accomplished without a court order. But any court-ordered payments from one party to another must wait until a final judgment, and this court cannot "hurry [the case] along by granting final relief at the outset." Sims, 291 F. at 708. Post-trial judgment is likely many months away, but "parties are free to settle lawsuits" anytime and "the law favors and encourages settlements." See Hage v. Gen. Serv. Bureau, 306 F. Supp. 2d 883, 888 (D. Neb. 2003). The Jacobsens' motion for a temporary lease, (Doc. 21), should be **DENIED**.

The court will schedule a status conference during the week of May 6, 2024.

Dated this 29th day of April, 2024.

/s/Alice R. Senechal
Alice R. Senechal, Magistrate Judge
United States District Court

**NOTICE OF RIGHT TO OBJECT**[2]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **May 3, 2024**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[2] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.